2 P.3d 752

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Samuel PACHECO, Defendant–Appellant.**

No. 25422.

Court of Appeals of Idaho.

May 25, 2000.

---

368

Woolf, Combo & Thompson, Idaho Falls, for appellant. Stevan H. Thompson argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge.

Samuel Pacheco was found guilty of aggravated assault, enhanced for use of a deadly weapon and being a persistent violator. He was sentenced to twenty-seven years of incarceration with seven years fixed. We affirm his judgment of conviction and sentence.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Pacheco, dressed in a denim jacket, jeans and white and blue Reebok tennis shoes, walked into the men's furnishings section of the ZCMI department store in Idaho Falls. He tried on a pair of black-framed sunglasses and looked at other merchandise. Later, he squatted down behind a display and concealed the glasses in the sleeve of his jacket. ZCMI security employees Paul Withers and Brett Robison observed Pacheco's activities through the store's video surveillance system. After walking about the store for a few minutes, Pacheco left without paying for the sunglasses. Robison met Pacheco outside the store, identified himself, stated why he was stopping him and escorted Pacheco back into the store where Withers caught up with them. There, Pacheco turned as if to head back out to the mall, but Withers grabbed his left arm to stop him. According to the trial testimony of Robison and Withers, Pacheco then took several steps backwards, leveled a large stainless steel or nickel plated semi-automatic handgun at Robison and told them to get back or he would shoot. When Robison attempted to follow him, Pacheco cocked the handgun and threatened to kill him. Pacheco then exited the store and ran into the parking lot. The sunglasses, with the ZCMI label still attached, were found in the bushes outside the store. Video clips from the ZCMI surveillance system showing Pacheco taking the sunglasses was aired on the television news.

Pacheco was identified and located at his home in Afton, Wyoming. Idaho Falls Police Officer Darren Cook accompanied the Afton police in serving a Wyoming arrest warrant on Pacheco and executing a Wyoming search warrant for his home. In the garage, Cook observed ammunition for both a .44 and a .45 caliber firearm and a pair of white and blue Reebok tennis shoes. Pacheco was arrested and charged with aggravated assault and with enhancements for being a persistent violator and using a deadly weapon. To support the persistent violator enhancement, the state alleged that Pacheco had two prior felony convictions from Utah, an aggravated robbery and aggravated burglary, both entered on July 17, 1980 in the same judgment of conviction.

Prior to trial, counsel for Pacheco argued that the two Utah felonies were related and could only count as one under the persistent violator statute. *See State v. Brandt,* 110 Idaho 341, 715 P.2d 1011 (Ct.App.1986). On the day of trial, the state filed an amended information seeking to include a 1978 California conviction for unlawful driving or taking of a motor vehicle as a second felony conviction for the purpose of applying the persistent violator statute. Pacheco objected on the ground that such a late amendment prejudiced his ability to prepare a defense to the allegation. The district court permitted the amendment to the persistent violator allegation, citing *State v. Smith,* 116 Idaho 553, 777 P.2d 1226 (Ct.App.1989), as authority allowing an amendment to the information until the state rested its case.

At trial, Robison and Withers testified to the facts set forth above. Counsel for Pacheco sought to offer the testimony of Kandi Turley Ames, Ph.D., a psychologist and expert witness on memory and perception, to challenge the testimony of Robison and Withers that Pacheco had a firearm in his hand. The court refused to allow Ames's expert testimony on the ground that it would not assist the trier of fact given the witnesses' detailed recollections of the firearm and their individual experiences with firearms.

As Officer Cook began testifying to the evidence found during the search of Pacheco's home, counsel for Pacheco moved for a mistrial based upon the state's late production of Cook's police report, the search warrant and inventory. The state explained that it had disclosed these items on the morning of Cook's testimony. The court found that the defense was aware of the existence of the search warrant and inventory pursuant to the state's letter three months before trial, affording the defense the opportunity to investigate and challenge the admissibility of the evidence seized under the search warrant—the shoes and ammunition. The court then allowed the defense two hours to review the late disclosed documents to see if there

was additional evidence that should have been disclosed and how the late production prejudiced Pacheco. As a sanction for late production, however, the court ruled that the actual tennis shoes and .45 caliber ammunition would not be admitted into evidence. After a recess, counsel for Pacheco acknowledged that Pacheco's case had not been prejudiced by the state's late disclosure. The court also found that there was nothing to indicate late disclosure had actually prejudiced the defense. Therefore, Officer Cook was permitted to testify about the evidence found in Pacheco's home.

Pacheco testified that he had stolen the sunglasses and acted with hostility and fled from the ZCMI security officers, but did not have a gun in his possession. He explained that perhaps the sunglasses had looked like a gun because of the way he might have been holding them.[1]

The jury found Pacheco guilty of aggravated assault, that he had used a deadly weapon in the commission thereof and that he had two prior felony convictions making him a persistent violator. Pacheco, now represented by substitute counsel, filed a motion for a new trial raising the same claims presented in his motion for a mistrial. Following a hearing on the merits, the district court denied both motions. At sentencing, the court imposed a prison term of twenty-seven years, with seven years fixed. Pacheco appeals.

## II.

## DISCOVERY VIOLATION

Pacheco asserts that the state failed to disclose a police report, the search warrant and the inventory of items seized until Officer Cook of the Idaho Falls Police Department testified at trial. Pacheco argues that he was denied a fair trial as a result, but

without articulating the particular prejudice resulting from the late disclosure.

## A. Standard of Review for Late Disclosure

■■■ On appeal from the district court's order denying a defendant's motion alleging prejudice from the state's late disclosure of evidence, we review the trial court record to see if there was substantial and competent evidence to support a finding of no unfair prejudice. *State v. Byington,* 132 Idaho 589, 592–93, 977 P.2d 203, 206–07 (1999). When an issue of late disclosure of prosecution evidence is presented, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving a fair trial. *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995); *State v. Johnson,* 132 Idaho 726, 728, 979 P.2d 128, 130 (Ct.App.1999); *State v. Canelo,* 129 Idaho 386, 389, 924 P.2d 1230, 1233 (Ct.App.1996). The defendant bears the burden of establishing prejudice by showing that there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different. *See, e.g., State v. Spradlin,* 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct. App.1991).

## B. Analysis

■■■ As Officer Cook began testifying to the evidence found during the search of Pacheco's home, counsel for Pacheco moved for a mistrial based upon the state's late disclosure of Cook's police report, the search warrant and inventory. The court found that the defense was aware of the existence of the search warrant and inventory pursuant to a letter from the prosecutor three months before trial, affording the defense ample opportunity to investigate and challenge the admis-

---

1. Pacheco testified that Robison ran after him after he ran out to the ZCMI store:
   Q: Were you running?
   A: I was. And I wondered why he [Robison] was running after a guy with a .45 automatic.
   Q: You were wondering that?
   A: Well, after I saw the thing on the news, and everything, yes.

. . . .
   Q: Sure. Okay. If I understand correctly, the real dispute here is when you turned and threatened the officers, you did not have a handgun in your possession?
   A: That is correct.

sibility of the evidence seized under the search warrant—the shoes and ammunition. After allowing the defense a two-hour continuance to review the late disclosed documents, counsel acknowledged that Pacheco's case had not been prejudiced by the state's late disclosure. The trial court then found that nothing in the record indicated Pacheco had been prejudiced by the late disclosure. However, as a sanction for late disclosure, the court also ruled that the tennis shoes and .45 caliber ammunition would not be admitted into evidence.

We conclude that Pacheco failed to meet his burden of showing that the late disclosure in any way prejudiced his case. Accordingly, we hold that substantial and competent evidence supports the trial court's conclusion that the state's untimely disclosure, although error, did not prejudice Pacheco. I.C.R. 16; *Tapia,* 127 Idaho at 255, 899 P.2d at 965; *Canelo,* 129 Idaho at 389, 924 P.2d at 1233.

## III.

## THE COURT'S EXCLUSION OF EXPERT TESTIMONY ON THE RELIABILITY OF THE EYEWITNESSES' IDENTIFICATION OF A FIREARM

■ Pacheco argues that the trial court erred in refusing to admit the expert testimony of a psychologist, Kandi Turley Ames, Ph.D, concerning the reliability of Robison and Withers' observation of a firearm in Pacheco's hand. Dr. Ames was to testify, after viewing the testimony of Robison and Withers, to the factors that could affect a witness's perception and ability to recognize objects and the probability of misperception under the facts of this case.

■ The admissibility of expert testimony is discretionary with the trial court and, absent an abuse of discretion, a decision will not be disturbed on appeal. *State v. Merwin,* 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998); *State v. Blackstead,* 126 Idaho 14, 21, 878 P.2d 188, 195 (Ct.App.1994). The issue of the admissibility of expert witness testimony on the reliability of memory and perception is an area of some controversy and question under our rules of evidence. *Compare State v. Hoisington,* 104 Idaho 153, 165, 657 P.2d 17, 29 (1983) (a case decided prior to the adoption of the Idaho Rules of Evidence in which the Idaho Supreme Court ruled that the trustworthiness of eyewitness observations is not beyond the ken of the jurors and thus found no error in the trial court's refusal to admit the testimony of Dr. Loftus, a nationally renowned expert in the field, whose opinions would have concerned the reliability of eye witness identification) *with State v. Alger,* 115 Idaho 42, 50–51, 764 P.2d 119, 127–28 (Ct.App.1988) (suggesting that findings of social science experts' research which provide insight into the reliability of eyewitness identification may be of assistance to the jury in particular cases).

The state presented evidence that both Robison and Withers were familiar with firearms. Withers was a former police officer and Robison was an Idaho Falls reserve police officer. Both witnesses testified that Pacheco drew a firearm on them and each had 15–40 seconds to observe the weapon and determine the caliber to be either .40 or .45. Moreover, Pacheco made no offer of proof as to the specifics of Dr. Ames' testimony. The court refused to allow Ames to testify as an expert on the memory or perceptions of Robison and Withers relative to the presence of a firearm, on the ground that such testimony would not assist the trier of fact.

In light of these facts, we conclude that the district court did not abuse its discretion in ruling that the reliability of the ZCMI officers' observation of a firearm in Pacheco's hand was well within the ability of the jury to determine, i.e., that no expert testimony was needed to aid the trier of fact in understanding the evidence or determining a fact in issue. *See* I.R.E. 702.[2] We therefore find no error in the trial court's refusal to admit the testimony of Dr. Ames.

---

**2.** We recognize that in appropriate circumstances such testimony, properly circumscribed, may be of assistance to the jury regarding eyewitness identification and the factors to be considered in determining the accuracy of such identification. *See, e.g., People v. Wright,* 45 Cal.3d 1126, 248 Cal.Rptr. 600, 755 P.2d 1049 (1988); CALJIC 2.92 (5th ed. 1996 Rev.).

## IV.

## APPLICATION OF THE PERSISTENT VIOLATOR STATUTE

▮ Pacheco argues that the district court's grant of the state's motion on the day of trial to amend the information with an additional allegation regarding the persistent violator charge—a 1978 California conviction for unlawful driving or taking a motor vehicle—prejudiced his right to a fair trial by denying him sufficient time to determine whether that conviction was a felony or a misdemeanor.

Idaho Code section 19–2514 provides:

Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life.

The state bears the burden of making a "prima facie showing of the validity of a prior conviction used to enhance a pending crime." *State v. Miller*, 131 Idaho 288, 294, 955 P.2d 603, 609 (Ct.App.1997). The state is only required to prove the existence of the convictions through the judgments of conviction or other evidence. *Id.*

From the documents offered by the state to prove Pacheco's 1978 California conviction, it appears that a violation of Cal. Veh.Code § 10851 can be a misdemeanor or a felony, depending on the disposition. *See State v. O'Dell,* 71 Idaho 64, 69–70, 225 P.2d 1020, 1022 (1950) (discussing California's crime of unlawful driving or taking a motor vehicle and holding that where a crime is punishable by two types of punishment—imprisonment in the penitentiary or a jail sentence—the question of whether the crime is a felony or misdemeanor is answered by the type of sentence that is imposed). The documents offered by the state clearly show the conviction to be a felony. At his change of plea hearing, Pacheco was informed that the court could impose three years of confinement in state prison for his violation of Cal. Veh.Code § 10851, plus an additional eighteen months of parole. Following his guilty plea, Pacheco was placed on supervised probation for three years and permitted to travel and reside out-of-state subject to the provisions of the Interstate Compact.

▮ In making its prima facie presentation, the state needed only to produce copies of judgments identifying the crimes as felonies. *State v. Smith*, 116 Idaho 553, 560, 777 P.2d 1226, 1233 (Ct.App.1989). From the above facts, Pacheco is unable to challenge the validity of the California conviction as a felony. Accordingly, Pacheco cannot show that the amendment of the information on the day of trial prejudiced his defense to the persistent violator allegation.

## V.

## CONCLUSION

The conviction and sentence for aggravated assault, enhanced for use of a firearm and being a persistent violator, is therefore affirmed.

Chief Judge PERRY and Judge LANSING concur.